WELLS, FARGO & Co. *v.* CARR and others.

(*Circuit Court, D. California.*   November 5, 1885.)

PROMISSORY NOTE—WRITTEN CONTRACT—FAILURE OF CONSIDERATION—EVIDENCE.
 Where a note is given in pursuance of a written contract for the assignment of a mail route that is liable to be cut down, with corresponding reduction of pay, and such route is by law cut down, it will not constitute a partial failure of consideration, and parol evidence cannot be admitted in an action on such note, to show that it was verbally agreed when the note was given that if the pay was reduced the liability of the maker should also be correspondingly reduced.

At Law.
*Pillsbury & Blanding*, for plaintiff.
*William Matthews*, for defendants.
SAWYER, J.   This is an action on a note payable in 16 installments. The note was given on June 30, 1882. The contract, in pursuance of which it was executed, was made on May 7, 1882. The defense set up, and attempted to be established, is a failure, or partial failure, of consideration.

In May, 1882, the Telegraph Stage Company sold all its stock and material to the defendants, and also assigned a contract with the government for carrying the mails from Santa Barbara to Soledad, and, for that portion of the consideration arising from an assignment of the contract, the defendants were to pay the sum of $12,000 in 16 installments. Another portion was to be paid for the stock. This suit is on the note, which was given in pursuance of the agreement for the assignment of the contract for carrying the mails. Under the contract for carrying the mails, the carriers were liable to have the route cut down by the government, with a corresponding reduction of the amount to be paid.

Such was the law at that time, in view of which the contract was made. The parties, assignors and defendants, were all aware of that fact. The government could cut off any portion of the route. It did reduce the route some 60 miles, after the assignment, and made a corresponding reduction in the amount of money paid.

It is alleged that there was, in consequence, a part failure of consideration, and that the defendants can only be called upon to pay on their note for the portion of the route that was continued; and it is alleged that there was a verbal understanding, at the time the contract was made, that such should be the case. The written contract, however, does not say anything of the kind. The contract, for which the note was afterwards substituted, was made on May 7th, and is as follows:

"It is hereby agreed and understood between I. E. Haskell, superintendent of the Telegraph Stage Company, and Wm. H. Taylor, superintendent of Coast Line Stage Company, each authorized and acting for their respective companies, that in consideration of the sale of certain stage property between Santa Barbara and San Luis Obispo, California, (more fully described in an article of bargain and sale between the parties to the foregoing, of this date,) and the transfer by C. H. Cotter, of the Telegraph Stage Co., of the mail contract between Santa Barbara and Soledad, California, from July 1, 1882, until June 30, 1886, to the said Coast Line Stage Co., the said Coast Line Stage Co., by their agent, W. H. Taylor, bind themselves to pay to the said A. E. Haskell, of the Telegraph Stage Co., the sum of twelve thousand dollars, to be divided into sixteen payments, of seven hundred and fifty dollars each; the first payment to be made on December 10, 1882, and the same amount (seven hundred and fifty dollars) to be paid every three months thereafter, until the whole is paid. This memorandum to be void after transfer of said mail contract, and other arrangements made necessary to the full completion of the foregoing agreement."

This is the contract as reduced to writing at the time, which provides that $12,000 are to be paid, and nothing is said about any deduction to be made in case the distance should be cut down by the government. The note was executed, in pursuance of the agreement, subsequently, on June 30th, on the transfer of the property, when the transaction was completed, and no deduction is provided for in the note upon the curtailment of the route. Mr. Taylor testifies that at the time of making the contract it was agreed between him and Has-

kell, that if the route should be razeed so as to cut off a portion, there should be a proportionate reduction of the amount to be paid for the assignment. The contract being in writing, I am inclined to think that this fact, if it be a fact, could not be given in evidence. It would contradict or enlarge a written contract by parol evidence. If it were admissible, Mr. Haskell testifies directly and positively to the contrary. He said no such agreement was made by him. He denies it point blank. Mr. Taylor himself does not profess to have been present when the note was given, and he admits that he was not. Mr. Haskell and Mr. Cotter both testify that there was nothing whatever said about razeeing or cutting down the route at that time. At that interview four of the parties were present, two on each side; Buckley and Carr representing the parties giving the note, and Cotter and Haskell representing the other parties. Both Cotter and Haskell say that at that time nothing was said about the matter, and Buckley and Carr are not put on the stand at all; so there is no testimony on that side as to what took place at the time of the making of the note. Neither the contract nor the note says anything about deduction, and at the making of the note nothing was said about it. All who testify for plaintiff say that they never heard of any such qualification of this contract as is now set up. There is no evidence, except Taylor's, to show anything of the kind, and the positive testimony of two witnesses is in harmony with the written contracts to the contrary. As to what took place at the making of the contract, the testimony is directly contradictory, and Haskell's statement is positive. The fact that it was not mentioned in the written contract is confirmatory of his statement. Admitting that the testimony is admissible,—but I think it is not,—still the defense is not made out.

Aside from a failure of proof on this point, defendants seem to rely on the fact that there is a partial failure of consideration. But there is no failure of consideration. Defendants simply took an assignment of that contract, knowing that the distance, as is the case in all government mail contracts, was liable to be cut down. The contractors transferred all they could transfer,—all their rights under the contract. They assigned the contract as it was, and all there was in them to assign. The defendants got all they purchased, all that was assigned, all that could be assigned. They got the entire contract as it was. They stepped into the assignors' shoes, knowing that a portion of the route was liable to be cut off,—knowing exactly what they bought. Under the law, it was well known that the government was entitled, at any time, to cut off a portion of the route. It was one of the terms of the contract, express or implied, that it might be cut down, and the parties got an assignment of all they purchased, with full knowledge of the terms of the contract. The defense is therefore, not sustained, and there must be judgment for the complainant. There will be a finding for the installments due, and the interest due thereon. There was an attempt to show that

part payment had ·been accepted as a full payment of all that was due, recognizing the agreement set up. The evidence satisfies me that there was no such acceptance. The receipt was on account, by parties who knew nothing about the agreement at the time, and they promptly repudiated any such agreement. The payments were received on account, and never accepted as full payment. There will be a general finding drawn in favor of the plaintiff for the amount due and unpaid, and the interest.